# EXHIBIT A

CASE   21-C-117

RAYMOND MCCORMICK                    KANAWHA

                    vs.   SPARTAN MINING COMPANY, LLC                    PAGE   1

| LINE | DATE | ACTION |
|---|---|---|
| 1 | 02/08/21 | # CASE INFO SHEET; COMPLAINT; ISSUED SUM & 2 CPYS; F FEE; RCPT 58491D; $200.00 |
| 2 | | |
| 3 | 03/05/21 | # LET FR SS DTD 3/1/21; SUM W/RET (3/1/21 SS) AS TO SPARTAN |
| 4 | | MINING CO. |
| 5 | 03/09/21 | # E-CERT FR SS AS TO SPARTAN MINING CO. DTD 3/4/21 |


A TRUE COPY
TESTE: Cathy S. Gatson
CIRCUIT COURT KANAWHA COUNTY, W.VA.

**CIVIL CASE INFORMATION STATEMENT**
**CIVIL CASES**

In the Circuit Court of **KANAWHA** County, West Virginia

FILED

2021 FEB -9 PM 1: 06

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

I.     CASE STYLE:

Plaintiff(s):
Raymond McCormick

Case No. *21-C-117*

Judge *Bailey*

v.

| Defendant(s): | Days to Answer | Type of Service |
|---|---|---|
| Spartan Mining Company, LLC | 30 | Secretary of State |

Original and 3 copies of complaint furnished herewith.

PYMT Type K
Rcpt # 584910    $200 $135___
Iss. Sum. + 2 sc    ___No Sum. Iss
✓Ret. to Atty.    ___$20cm X ___
___Mailed CM/RM    ___$5 clk X ___
___Mailed to sos w/ck# _____
___Sent to _____ w/ck# _____ ___$15 mdf X ___

| PLAINTIFF:     Raymond McCormick | CASE NUMBER: |
|---|---|
| DEFENDANT:     Spartan Mining Company, LLC | |

II.   TYPE OF CASE:

| TORTS | OTHER CIVIL | |
|---|---|---|
| ☐  Asbestos | ☐  Adoption | ☐  Appeal from Magistrate Court |
| ☐  Professional Malpractice | ☐  Contract | ☐  Petition for Modification of Magistrate Sentence |
| ☐  Personal Injury | ☐  Real Property | ☐  Miscellaneous Civil |
| ☐  Product Liability | ☐  Mental Health | ☐  Other |
| ☒  Other Tort | ☐  Appeal of Administrative Agency | |

III.   JURY DEMAND:     Yes ☒     No ☐

CASE WILL BE READY FOR TRIAL BY *(MONTH/YEAR)*     *March/2022*

IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITIY OR AGE?   Yes ☐     No ☒

☐   Wheelchair accessible hearing room and other facilities
☐   Interpreter or other auxiliary aid for the hearing impaired
☐   Reader or other auxiliary aid for the speech impaired
☐   Spokesperson or other auxiliary aid for the speech impaired
☐   Other: _____

*Attorney Name:* **D. Christopher Hedges, Esquire**
*Firm:* **Calwell Luce diTrapano PLLC**
*Address:* **500 Randolph Street**
**Charleston, WV  25302**
**304-343-4323**

*Representing:*
Plaintiff ☒   *Defendant* ☐
*Cross-Complainant* ☐   *Cross-Defendant* ☐

*Dated:  February 5, 2021*

_____
*Signature*

☐ *Pro Se*

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

2021 FEB -8 PM 1: 06

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

**RAYMOND McCORMICK,**

    **Plaintiff,**

**v.**

Civil Action No. 21-C-117

Judge _Bailey_

**SPARTAN MINING COMPANY, LLC,**
**a West Virginia limited liability company,**

    **Defendant.**

## COMPLAINT

For his complaint against Spartan Mining Company, LLC, Plaintiff Raymond McCormick states as follows:

## PARTIES

1.    Plaintiff, Raymond McCormick, was, at all relevant times herein, a resident of Kanawha County, West Virginia.

2.    Defendant Spartan Mining Company, a West Virginia limited liability company (hereafter referred to as "Spartan") was at all times relevant herein in the business of mining coal in Kanawha County, West Virginia.

3.    Defendant employs at least 12 employees.

## FACTS

4.    Plaintiff Raymond McCormick, at all relevant times herein, was an employee of Defendant Spartan.

5.      Plaintiff began his full-time employment with Defendant February 9, 2016 and during his employment as a shuttle car operator Plaintiff earned approximately $26.00 per hour, working between 40 and 60 hours per week.

6.      While Plaintiff was employed by Defendant Spartan, the Covid-19 Pandemic ensued.

7.      As a result of the Covid-19 Pandemic, Defendant Spartan implemented a policy on March 23, 2020, stating that if any employees of Defendant experienced any symptoms associated with Covid-19, they were required to: (1) not come into the workplace, (2) they were to call or email their supervisor and (3) they were to seek medical care to address the symptoms.

8.      On March 29, 2020, Plaintiff had been experiencing a fever, sore throat and diarrhea, but as of March 30, 2020, Plaintiff felt well enough to begin the hour-long drive to work, hoping to feel better along the way.

9.      Once Plaintiff parked his car at Defendant Spartan's property and began walking towards the bathhouse, Plaintiff felt increasingly ill, and realized he was too ill to be at work.

10.     Before reaching the building, Plaintiff turned around, got in his car, and left Defendant Spartan's premises to return home. Plaintiff did not want to expose his co-workers to his illness, which included some of the symptoms of Covid-19, the virus which was subject to Defendant's new policy.

11.     Once Plaintiff had phone service, he called the dispatcher to inform him of his illness and sick leave, which is customary.

12.     Plaintiff went to an urgent care for treatment, where he was examined and tested negative for Influenza A, Influenza B and Strep throat, then left for home and went to bed.

2

13.     When Plaintiff contacted Defendant the next morning to ask if he should be tested for Covid-19, Plaintiff was terminated.

14.     Defendant's stated reason for termination was that Plaintiff had refused a drug test. Unknown to Plaintiff, Defendant had set up drug testing in the bathhouse the day before, and claimed that Plaintiff had refused the drug test.

15.     Plaintiff had never refused to submit to drug or alcohol testing during his four years of employment with Defendant Spartan and had no negative history whatsoever regarding any drug or alcohol testing at Defendant Spartan.

16.     Plaintiff repeatedly tried to explain his illness and that he was trying to abide by Defendant's Covid-19 policy, but Defendant refused to acknowledge his explanation or reconsider his termination.

### COUNT I

### VIOLATION OF WEST VIRGINIA HUMAN RIGHTS ACT – PERCEIVED DISABILITY

17.     Plaintiff incorporates by reference, as though fully set forth in this Count, the allegations in paragraphs 1 through 16 of this Complaint.

18.     The above-described acts of Defendant and by and through its agents, constitute violation of the West Virginia Human Rights Act, W. Va. Code §51-11-1 *et seq*. and the rules promulgated pursuant thereto, by perceiving the Plaintiff as disabled and subjecting Plaintiff to unlawful disability discrimination regarding the terms and conditions of his employment.

3

## COUNT II

### VIOLATION OF PUBLIC POLICY AND HUMAN RIGHTS ACT

19.     Plaintiff incorporates here by reference, as though fully set forth in this Count, the allegations in paragraphs 1 through 18 of this Complaint.

20.     The public policy as set out in the West Virginia Human Rights Act, is that no employer shall discriminate in employment against an employee due to the employee's disability where employee is regarded as having such an impairment.  Plaintiff's symptoms of his  health condition on March 30, 2020, created a disability or perceived disability.

21.     Defendant took adverse employment action with regard to Plaintiff's employment based upon his disability "contrary to the principles of freedom and equality of opportunity" as set out in the Act.

22.     As a result of the discrimination, in violation of West Virginia public policy, Plaintiff has been denied the rights afforded to him under the Act.  The effect of the practice complained of above has been to deprive Plaintiff of equal employment opportunities.

23.     Defendant's conduct was malicious, intentional, callous, and in reckless disregard of Plaintiff's protected rights entitling Plaintiff to punitive damages in an amount to be determined by a jury.

24.     As a direct and proximate result of Defendant's conduct Plaintiff has suffered loss of wages and benefits, emotional pain, embarrassment, suffering, inconvenience, mental anguish and other nonpecuniary losses.

25.     The actions of Defendant entitle Plaintiff to an award of attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands judgment against the Defendant, for all counts stated above, for compensatory and punitive damages in amounts to be determined by a jury, including

front pay and back pay, together with prejudgment and post-judgment interest, reinstatement, costs, attorneys' fees, and whatever further relief the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

**RAYMOND MCCORMICK**
By Counsel

Respectfully submitted:

Stuart Calwell, Esq. (WV Bar No. 0595)
L. Danté diTrapano, Esq. (WV Bar No. 6778)
D. Christopher Hedges, Esq. (WV Bar No. 7894)
CALWELL LUCE DiTRAPANO PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV 25302
(304) 343-4323
chedges@cldlaw.com

*Counsel for Plaintiff*

and

Lia DiTrapano Fairless, Esq. (WV State Bar No. 6884)
DiTrapano Law Firm, PC
604 Virginia St., East
Suite 307
Charleston, WV 25301
304-414-0184
lia@ditrapanolawfirm.com

*Counsel for Plaintiff*

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

FILED

2021 MAR -5 AM 11: 45

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

KANAWHA COUNTY CIRCUIT COURT
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

**Control Number:** 271459

**Defendant:** SPARTAN MINING COMPANT, LLC
209 West Washington Street
Charleston, WV 25302 US

**Agent:** Corporation Service Company
**County:** Kanawha
**Civil Action:** 21-R-117
**Certified Number:** 92148901125134100003084895
**Service Date:** 3/1/2021

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

3-4

FILED    **SUMMONS**

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

RAYMOND McCORMICK,                          }
                                            }
                **Plaintiff,**              }    CIVIL ACTION NO.: 21-P-117
                                            }
v.                                          }    Bailey
                                            }
                                            } SERVE:
SPARTAN MINING COMPANY, LLC,                } Spartan Mining Company, LLC
a West Virginia limited liability company,  } Corporation Service Company
                                            } 209 West Washington Street
                **Defendant.**             } Charleston, WV  25302
                                            }
                                            }

**To the above-named Defendant:**

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon, D. Christopher Hedges, plaintiff's attorney, and Calwell Luce diTrapano PLLC, whose address is 500 Randolph Street, Charleston, West Virginia 25302, an answer, including any related counterclaim you may have, to the complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve an answer within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated: 2\8\21                              _____
                                           **Cathy S. Gatson, Clerk**
                                                  Clerk of Court
                                                 By CPugh

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

FILED

2021 FEB -8 PM 1:06

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

RAYMOND McCORMICK,

    Plaintiff,

v.

    Civil Action No. 21-P-117

SPARTAN MINING COMPANY, LLC,
a West Virginia limited liability company,

    Judge Bailey

    Defendant.

## COMPLAINT

For his complaint against Spartan Mining Company, LLC, Plaintiff Raymond McCormick states as follows:

### PARTIES

1.    Plaintiff, Raymond McCormick, was, at all relevant times herein, a resident of Kanawha County, West Virginia.

2.    Defendant Spartan Mining Company, a West Virginia limited liability company (hereafter referred to as "Spartan") was at all times relevant herein in the business of mining coal in Kanawha County, West Virginia.

3.    Defendant employs at least 12 employees.

### FACTS

4.    Plaintiff Raymond McCormick, at all relevant times herein, was an employee of Defendant Spartan.

5.      Plaintiff began his full-time employment with Defendant February 9, 2016 and during his employment as a shuttle car operator Plaintiff earned approximately $26.00 per hour, working between 40 and 60 hours per week.

6.      While Plaintiff was employed by Defendant Spartan, the Covid-19 Pandemic ensued.

7.      As a result of the Covid-19 Pandemic, Defendant Spartan implemented a policy on March 23, 2020, stating that if any employees of Defendant experienced any symptoms associated with Covid-19, they were required to: (1) not come into the workplace, (2) they were to call or email their supervisor and (3) they were to seek medical care to address the symptoms.

8.      On March 29, 2020, Plaintiff had been experiencing a fever, sore throat and diarrhea, but as of March 30, 2020, Plaintiff felt well enough to begin the hour-long drive to work, hoping to feel better along the way.

9.      Once Plaintiff parked his car at Defendant Spartan's property and began walking towards the bathhouse, Plaintiff felt increasingly ill, and realized he was too ill to be at work.

10.      Before reaching the building, Plaintiff turned around, got in his car, and left Defendant Spartan's premises to return home.  Plaintiff did not want to expose his co-workers to his illness, which included some of the symptoms of Covid-19, the virus which was subject to Defendant's new policy.

11.      Once Plaintiff had phone service, he called the dispatcher to inform him of his illness and sick leave, which is customary.

12.      Plaintiff went to an urgent care for treatment, where he was examined and tested negative for Influenza A, Influenza B and Strep throat, then left for home and went to bed.

13.     When Plaintiff contacted Defendant the next morning to ask if he should be tested for Covid-19, Plaintiff was terminated.

14.     Defendant's stated reason for termination was that Plaintiff had refused a drug test. Unknown to Plaintiff, Defendant had set up drug testing in the bathhouse the day before, and claimed that Plaintiff had refused the drug test.

15.     Plaintiff had never refused to submit to drug or alcohol testing during his four years of employment with Defendant Spartan and had no negative history whatsoever regarding any drug or alcohol testing at Defendant Spartan.

16.     Plaintiff repeatedly tried to explain his illness and that he was trying to abide by Defendant's Covid-19 policy, but Defendant refused to acknowledge his explanation or reconsider his termination.

<u>COUNT I</u>

**VIOLATION OF WEST VIRGINIA HUMAN RIGHTS ACT –
PERCEIVED DISABILITY**

17.     Plaintiff incorporates by reference, as though fully set forth in this Count, the allegations in paragraphs 1 through 16 of this Complaint.

18.     The above-described acts of Defendant and by and through its agents, constitute violation of the West Virginia Human Rights Act, W. Va. Code §51-11-1 *et seq*. and the rules promulgated pursuant thereto, by perceiving the Plaintiff as disabled and subjecting Plaintiff to unlawful disability discrimination regarding the terms and conditions of his employment.

## COUNT II

## VIOLATION OF PUBLIC POLICY AND HUMAN RIGHTS ACT

19.     Plaintiff incorporates here by reference, as though fully set forth in this Count, the allegations in paragraphs 1 through 18 of this Complaint.

20.     The public policy as set out in the West Virginia Human Rights Act, is that no employer shall discriminate in employment against an employee due to the employee's disability where employee is regarded as having such an impairment.  Plaintiff's symptoms of his  health condition on March 30, 2020, created a disability or perceived disability.

21.     Defendant took adverse employment action with regard to Plaintiff's employment based upon his disability "contrary to the principles of freedom and equality of opportunity" as set out in the Act.

22.     As a result of the discrimination, in violation of West Virginia public policy, Plaintiff has been denied the rights afforded to him under the Act.  The effect of the practice complained of above has been to deprive Plaintiff of equal employment opportunities.

23.     Defendant's conduct was malicious, intentional, callous, and in reckless disregard of Plaintiff's protected rights entitling Plaintiff to punitive damages in an amount to be determined by a jury.

24.     As a direct and proximate result of Defendant's conduct Plaintiff has suffered loss of wages and benefits, emotional pain, embarrassment, suffering, inconvenience, mental anguish and other nonpecuniary losses.

25.     The actions of Defendant entitle Plaintiff to an award of attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands judgment against the Defendant, for all counts stated above, for compensatory and punitive damages in amounts to be determined by a jury, including

4

front pay and back pay, together with prejudgment and post-judgment interest, reinstatement,

costs, attorneys' fees, and whatever further relief the Court deems appropriate.

### PLAINTIFF DEMANDS A JURY TRIAL.

RAYMOND MCCORMICK
By Counsel

Respectfully submitted:

Stuart Calwell, Esq. (WV Bar No. 0595)
L. Danté diTrapano, Esq. (WV Bar No. 6778)
D. Christopher Hedges, Esq. (WV Bar No. 7894)
CALWELL LUCE DITRAPANO PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV 25302
(304) 343-4323
chedges@cldlaw.com

*Counsel for Plaintiff*

and

Lia DiTrapano Fairless, Esq. (WV State Bar No. 6884)
DiTrapano Law Firm, PC
604 Virginia St., East
Suite 307
Charleston, WV 25301
304-414-0184
lia@ditrapanolawfirm.com

*Counsel for Plaintiff*

5

Civil Action Number          21-P-117

Package Identification Code   921489011251341000003084895

Signature Downloaded         3/8/2021 6:17:44 AM

Defendant Name               SPARTAN MINING COMPANT, LLC

FILED

2021 MAR -9  AM 9: 09

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

 **UNITED STATES
POSTAL SERVICE**

Date Produced: 03/08/2021

WEST VIRGINIA SECRETARY OF STATE:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 1251 3410
0003 0848 95. Our records indicate that this item was delivered on 03/04/2021 at 10:55 a.m. in
CHARLESTON, WV 25302. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:     308489

# EXHIBIT B

2013 WL 4829322

2013 WL 4829322
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia.

Sheena HUNT, Individually and
as the Administratrix of the Estate
of Russell Aaron Hunt, Plaintiff,

v.

BROOKS RUN MINING
COMPANY, LLC, Defendant.

Civil Action No. 1:13–0433.
|
Sept. 10, 2013.

**Attorneys and Law Firms**

James R. Akers, II, Akers Law Offices, Charleston, WV,
Stephen P. New, Beckley, WV, for Plaintiff.

Andrew Steven Felts, Gretchen M. Callas, Jackson Kelly,
Charleston, WV, David Z. Myerberg, Jackson Kelly,
Morgantown, WV, for Defendant.

***MEMORANDUM OPINION AND ORDER***

DAVID A. FABER, Senior District Judge.

**\*1** Pending before the court is plaintiff's motion to remand.
Doc. No. 5. For the reasons set forth below, the motion is
denied.

### I. Factual and Procedural Background

On December 7, 2012, in the Circuit Court of McDowell
County, West Virginia, plaintiff Sheena Hunt filed a deliberate
intent action against defendant Brooks Run Mining Company,
LLC ("Brooks Run") arising out of the death of her husband,
Russell Aaron Hunt. On January 9, 2013, Brooks Run
removed the case to this court on the basis of diversity
of citizenship. Plaintiff Hunt is a resident and citizen of
McDowell County, West Virginia. *See* Complaint ¶ 1. Brooks
Run is a Delaware limited liability company. *See* Notice of
Removal ¶ 8. The two sole members of Brooks Run are
AMFIRE, LLC, and AMFIRE WV, L.P. *See id.* at ¶ 9.

AMFIRE, LLC, is a Delaware limited liability company
whose sole member is Maxxum Carbon Resources, LLC. *See
id.* Maxxum Carbon Resources, LLC, is a Delaware limited
liability company whose sole member is Alpha Natutral
Resources, LLC. *See id.* Alpha Natural Resources, LLC, is
a Delaware limited liability company whose sole member
is Alpha Natural Resources, Inc. ("Alpha"). *See id.* Alpha
is a Delaware corporation with, according to the Notice of
Removal, its principal place of business in Bristol, Virginia.
*See id.*

AMFIRE WV, L.P. has two partners: AMFIRE, LLC and
AMFIRE Holdings, LLC. *See id.* AMFIRE Holdings, LLC
is a Delaware limited liability company with its principal
place of business in Bristol, Virginia. *See id.* The sole
member of AMFIRE Holdings, LLC is AMFIRE LLC, the
citizenship of which is discussed above. Accordingly, based
on the foregoing, Brooks Run contends that it is a citizen of
Delaware and Virginia for purposes of diversity jurisdiction.

Plaintiff has filed a motion to remand this case to the Circuit of
Court of McDowell County. She argues that "Brooks Run is
directed, controlled, coordinated, and substantially operated
in the State of West Virginia." *See* Motion to Remand p. 1.
According to plaintiff, "[t]here is at least an issue of fact" as to
whether Alpha's principal place of business is in West Virginia
and, therefore, diversity is lacking. *Id.* at 5.

### II. Analysis

Federal district courts may exercise diversity jurisdiction over
civil actions in which the matter in controversy exceeds
the sum or value of $75,000.00 and is between citizens of
different states. *See* 28 U.S.C. § 1332(a)(1). Title 28
United States Code Section 1441, known as the "removal
statute," provides that a case filed in state court may
be removed to federal court when it is shown by the
defendant that the federal court has original jurisdiction. *See*
*Mulcahey v. Columbia Organic Chems. Co.,* 29 F .3d 148,
151 (4th Cir.1994). The phrase "between citizens of different
states" has been interpreted as requiring "complete diversity,"
i.e., the citizenship of each plaintiff must be diverse from the
citizenship of each defendant. *Caterpillar Inc., v. Lewis,*
519 U.S. 61, 68 (1996)(citing *Strawbridge v. Curtiss,* 7
U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

**\*2**  It is well established that the party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied, *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994)(citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921)), and that any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand, *Mulcahey,* 29 F.3d at 151 (*citing Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100 (1941)).

For purposes of diversity jurisdiction, an unincorporated association, such as a limited liability company, is deemed to be a citizen of each state in which its members are citizens. *Gen. Tech. Applications, Inc. v. Exro Ltda.,* 388 F.3d 114, 120 (4th Cir .2004); *see also Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir.2011) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company ... is determined by the citizenship of all its members...."). Therefore, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Meyerson v. Harrah's East Chicago Casino,* 299 F.3d 616, 617 (7th Cir.2002).

Furthermore, the principal place of business of test applicable to corporate citizenship does not apply to a limited liability company, such as Brooks Run. *See Laudermilt v. Taggart Global, LLC,* Civil Action No. 1:11–0288, 2012 WL 4018286, \*1 n. 2 (S.D.W.Va. Sept. 12, 2012); *see also Gen. Tech. Applications, Inc.,* 388 F.3d at 121 ("A limited liability company organized under the laws of a state is not a corporation and cannot be treated as such under section 1332 until Congress says otherwise."). Accordingly, plaintiff's efforts to establish that Brooks Run's principal place of business is located in West Virginia is misguided, see Motion to Remand at pp. 1–2, because Brooks Run's principal place of business is irrelevant to the court's inquiry herein.

The sole corporate entity identified as a member or submember of Brook Run is Alpha. Alpha is incorporated in Delaware. However, a corporation is also a citizen "of the State where it has its principal place of business." 28 U.S.C.A. § 1332(c)(1). Title 28 United States Code Section 1332(c)(1) states that "a corporation shall be deemed

to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." Plaintiff contends that Alpha's citizenship is in question here because, according to her, Alpha's principal place of business is in West Virginia based upon its significant operations in that state.

In the past, the Fourth Circuit used two tests to determine a corporation's principal place of business: the "nerve center test" and the "place of operations test." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir.2011). However, in 2010, in an effort to resolve the differing interpretation given the phrase "principal place of business" by the lower courts, the Supreme Court made clear that " 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend,* 559 U.S. 77, 80 (2010); *see also Cent. W. Va. Energy Co.,* 636 F.3d at 107 ("In sum, the touchstone now for determining a corporation's principal place of business for diversity purposes is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.' ") (internal citations omitted). Elaborating, the Supreme Court noted that this is commonly referred to as the corporation's "nerve center" and "will typically be found at a corporation's headquarters." *Hertz,* 559 U.S. at 80–81.

**\*3**  Brooks Run has alleged that Alpha's principal place of business is in Virginia. In support thereof, it has offered the affidavit of Frank J. Wood, the Executive Vice President and Chief Financial Officer of Alpha. *See* Affidavit of Frank J. Wood, February 22, 2013, (hereinafter "Wood Aff. at ¶ ——"). According to Mr. Wood, Alpha's principal executive office, as of January 8, 2013, was located in Bristol, Virginia. *See* Wood Aff. ¶ 3. Mr. Wood also states that the business addresses for himself and the following Alpha officers are located in Bristol, Virginia: the Chairman and Chief Executive Officer; the President; the Executive Vice President & Chief Strategy Officer; the Senior Vice President & Chief Human Resources Officer; the Executive Vice President, General Counsel & Secretary; the Senior Vice President, Communications & Government Affairs; and the Executive Vice President & Chief Commercial Officer. *See id.* at ¶¶ 4–11. Wood further contends that all of Alpha's "activities are directed, controlled, and coordinated by the aforementioned officers and directors from Alpha Natural Resources, Inc.'s corporate headquarters in Bristol, Virginia." *Id.* at ¶ 12. Furthermore, according to Wood's affidavit, Alpha's books

and records are maintained at its corporate headquarters in Virginia and all of Alpha's financial, tax, and accounting functions are performed there as well. *See id.* at ¶¶ 13–14. Based upon the foregoing, the court concludes that the Alpha's "nerve center" is located in Virginia and, therefore, for purposes of diversity, Virginia is Alpha's principal place of business.[*]

In her efforts to persuade the court that Alpha's principal place of business is in West Virginia, plaintiff directs the court to Alpha's website which lists a number of offices in West Virginia. According to plaintiff, given "the overwhelming number of its offices are in West Virginia, it may reasonably be inferred that Alpha's officers direct, control, and coordinate the corporation's activities to a substantial extent in West Virginia." Motion to Remand at p. 5. Plaintiff's argument is without merit. She concedes that the same website notes that Alpha's corporate headquarters is located in Virginia. Furthermore, her conclusory allegations are not sufficient to call into question Wood's Affidavit which states that all of Alpha's "activities are directed, controlled, and coordinated by the aforementioned officers and directors from Alpha Natural Resources, Inc.'s corporate headquarters in Bristol, Virginia." Wood Aff. at ¶ 12. While plaintiff's focus on Alpha's significant operations in West Virginia might have been relevant under the "place of operations test," it is "not germane to the 'nerve center' test as laid out in Hertz." *Cent. W. Va. Energy Co.,* 636 F.3d at 107.

Accordingly, given that neither Brooks Run nor any of its members is a citizen of West Virginia, complete diversity exists.

### III. Conclusion

**\*4** For the aforementioned reasons, the court hereby **DENIES** plaintiff's motion to remand. Doc. No. 5. The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2013 WL 4829322

## Footnotes

[*]     In a decision predating Hertz, this court previously found that Alpha's "nerve center" is located in Virginia. *See Paitsel v. Brooks Run Mining Co., LLC,* Civil Action No. 1:08–00794, Memorandum Opinion and Order of August 12, 2008, at p. 7; *see also* Bledsoe v. Brooks Run Mining Co., LLC, Civil Action No. 5:11–00464, 2011 WL 5360042, *1 n. 3 (S.D.W.Va. Nov. 4, 2011) ("Brooks Run's members are not residents of West Virginia. Accordingly, to the extent Plaintiff's motion to remand relies on Brooks Run being a resident of West Virginia, it is denied.") (Berger, J.).

**End of Document**                                             © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

Case 2:21-cv-00189 Document 1-1 Filed 03/26/21 Page 23 of 29 PageID #: 30

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)

2014 WL 12625463

2014 WL 12625463
Only the Westlaw citation is currently available.
United States District Court, S.D. West Virginia,
Beckley Division.

Clayton E. PACK, Plaintiff,

v.

S&S FIRESTONE, INC. d/b/a Best
One Tire and Service; and Richard
White, Individually, Defendants.

CIVIL ACTION NO. 5:14-cv-17286
|
Signed 08/27/2014

**Attorneys and Law Firms**

Richard W. Walters, Shaffer & Shaffer, Charleston, WV, for
Plaintiff.

Brian J. Moore, Jennifer Jo Hicks, Dinsmore & Shohl,
Charleston, WV, for Defendants.

### MEMORANDUM OPINION AND ORDER

IRENE C. BERGER, UNITED STATES DISTRICT JUDGE

**\*1** The Court has reviewed the Plaintiff's *Motion to Remand*
(Document 7) and accompanying *Memorandum in Support*
(Document 8), as well as the *Defendant's Response to
Plaintiff's Motion to Remand* (Document 10). For the reasons
stated herein, the Court finds that the Plaintiff's motion to
remand should be denied because Defendant Richard White
was fraudulently joined, and therefore, this Court enjoys
subject matter jurisdiction.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Clayton E. Pack (Mr. Pack) was "employed as
a tire technician for Defendant S&S Firestone, d/b/a Best
One Tire and Service ... and its predecessors for over 30
years." (Document 8 at 1.) His supervisor, Defendant Richard
White, was also the store manager at Best One Tire and
Service. (*Id.*) In May of 2012, the Plaintiff took time off
work to undergo hernia surgery, returning to work on or
about June 11, 2012. (*Id.* at 1-2.) The Plaintiff's "employment
was terminated by the defendants ... due to cut backs" on

December 3, 2012. (*Id.* at 2.) He was "further advised by
defendant White that the termination was temporary but could
last up to six months. However, within a few months of his
termination, another employee of the defendant quit. Instead
of calling plaintiff back, the defendant White hired a new,
much younger individual." (*Id.*) The Plaintiff was 57 years
old at the time of his firing. (*Id.*) He allegedly was not
"provide[d] ... with his final paycheck within seventy-two
(72) hours." (*Id.*)

As a result, the Plaintiff initiated suit in the Circuit Court
of Raleigh County, West Virginia, on March 21, 2014. (See
*Complaint*, Document 1-1 at 5.) His complaint contained
three counts: (1) Violation of the West Virginia Wage Payment
and Collection Act, pursuant to West Virginia Code § 21-5-4
(Count One), (2) Violation of the West Virginia Human Rights
Act (Age Discrimination), pursuant to West Virginia
Code § 5-11-9 (Count Two), and (3) Punitive Damages
(Count Three).[1] (Document 1-1 at 7-9.) The Plaintiff seeks
"compensatory damages, including lost wages and benefits;
unmitigated front pay; emotional distress damages; punitive
damages; attorney fees and costs; prejudgment interest on all
amounts claimed; and such further relief as the Court may find
appropriate." (*Id.* at 9-10.)

The Defendants filed their *Notice of Removal* (Document 1)
on May 30, 2014.[2] The Plaintiff filed his *Motion to Remand*
(Document 7) and accompanying *Memorandum in Support*
(Document 8) on June 11, 2014. The Defendants then filed
their *Response to Motion to Remand* (Document 10) on June
24, 2014. To date, the Plaintiff has not filed a reply to the
Defendants' response in opposition.

### II. STANDARD OF REVIEW

**\*2** An action may be removed from state court to federal
court if it is one over which the district court would have
had original jurisdiction. 28 U.S.C. § 1441(a).[3] This
Court has original jurisdiction of all civil actions between
citizens of different states or between citizens of a state and
citizens or subjects of a foreign state where the amount in
controversy exceeds the sum or value of $75,000, exclusive of
interests and costs. 28 U.S.C. § 1332(a)(1)-(2). Generally,
every defendant must be a citizen of a state different from
every plaintiff for complete diversity to exist. Diversity
of citizenship must be established at the time of removal.

2014 WL 12625463

*Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1998).

Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441. Section 1446 requires that "[a] defendant or defendants desiring to remove any civil action from a State court shall file ... a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Additionally, Section 1446 requires a defendant to file a notice of removal within thirty days after receipt of the initial pleading. It is the long settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *Strawn et al. v. AT&T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted). Accordingly, in this case, the removing defendant has the burden to show the existence of diversity jurisdiction by a preponderance of the evidence. *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W. Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp. 2d 481, 488 (S.D. W. Va. 2001)). In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

"The 'fraudulent joinder' doctrine permits removal when a non-diverse party is (or has been) a defendant in the case.... This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). The Fourth Circuit sets a high standard for defendants attempting to demonstrate fraudulent joinder: "[T]he removing party must establish either: that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, or that there has been

outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original; brackets removed). Courts may consider the record beyond the pleadings to "determine the basis of joinder" and "whether an attempted joinder is fraudulent." *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation marks and citations omitted).

**\*3** The Fourth Circuit has described the standard for fraudulent joinder as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424. Furthermore, "all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists" and "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Id.* at 425 (internal quotation marks removed).

The *Hartley* court went on to explain:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact. Allowing joinder ... is proper in this case because courts should minimize threshold litigation over jurisdiction. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n. 13, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Jurisdiction should be as self-regulated as breathing; ... litigation over whether the case is in the right court is essentially a waste of time and resources." (internal quotation marks omitted)). Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

> *Id.*

### III. DISCUSSION

Case 2:21-cv-00189  Document 1-1  Filed 03/26/21  Page 25 of 29 PageID #: 32

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)
2014 WL 12625463

The Defendants argue that removal is proper because complete diversity exists between the parties, as Defendant White was fraudulently joined. The Defendants believe that White was fraudulently joined because "[s]imply put, Plaintiff's Complaint does not state any cognizable claim against White and White can, therefore, be ignored for purposes of determining whether complete diversity exists." (Document 1 at 2-3.) The Defendants claim that Mr. White cannot be liable under the West Virginia Wage Payment and Collection Act (WVWPCA) because "only people, firms, or corporations *who act as employers* can be held liable for violations of the [WVWPCA]." (*Id.* at 3.) (emphasis in original) They further argue that "[t]here is no allegation in Plaintiff's Complaint that White was Plaintiff's employer or was an officer of Best One. In fact, he was neither." (*Id.* at 3-4.)

They next assert that Mr. White cannot be liable for age discrimination and violations of the West Virginia Human Rights Act because "[a]ccording to the Act, the term 'employer' means 'the state, or any political subdivision thereof, and any person employing twelve or more persons within the state ...,'" and again, "there is no allegation in Plaintiff's Complaint that White employed him. Indeed, he did not." (Document 1 at 4.) (citing 🟡 W.Va. Code § 5-11-3(d).) Thus, the Defendants argue that "[b]ecause the Plaintiff has no cognizable claims against White, the doctrine of fraudulent joinder applies and White can be disregarded for purposes of determining diversity. Accordingly, there is complete diversity of citizenship in this case as defined by 🟡 28 U.S.C. § 1332(a)..." (*Id.* at 4.)

The Defendants also maintain that the amount in controversy exceeds $75,000, exclusive of interest and costs, because "[a]ssuming Plaintiff is successful, lost wages and benefits alone could easily surpass the jurisdictional amount." (Document 1 at 7.) (references omitted.) The Defendants point to the potential for a punitive damages award, as well as the availability of attorney fees pursuant to both statutory claims, to further support their contention that the amount in controversy requirement is satisfied. [4] (*Id.* at 8-9.)

 **\*4** The Plaintiff disagrees, and notes that "[i]n the present case, there are no allegations that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." (Document 8 at 4.) Specifically, the Plaintiff argues that Defendant White can be held liable, as defined and recognized

under 🚩 W.Va. Code 21-5-1(h), because the term " 'officer' shall include officers or **agents in the management of a corporation or firm**, who knowingly permits the corporation or firm to violate the provisions to this article." (*Id.* at 4.)

(quoting 🟡 W.Va. Code 21-5-1(h) (emphasis in original)). "It is the plaintiff's contention that as a manager of S&S, defendant White was an agent in the management of S&S who knowingly permitted the corporation to violate the Act, and is therefore liable for their unpaid wages and benefits." (*Id.* at 4-5.)

The Plaintiff also argues that White can be held liable under the Human Rights Act because 🟡 W.Va. Code 5-11-9(7) states that it is an unlawful discriminatory practice "[f]or **any person**, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution" to:

> Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass, or cause physical harm or economic loss **or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section** ...

(Document 8 at 5-6.) (citing 🟡 W. Va. Code § 5-11-9(7)) (emphasis in original). Based on this language, the Plaintiff states that under West Virginia law "employees can be held liable under the Human Rights Act." (*Id.* at 6.) The Plaintiff cites *Holstein v. Norandex, Inc.*, 194 W. Va. 727, 461 S.E.3d 473 (W. Va. 1955), for support of this proposition, and notes that the court in *Holstein* held that a person "includes both employees and employers. Indeed, any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation." (Document 8 at 6.) (citation omitted). The Plaintiff then maintains that in his complaint, "[he] specifically alleges that defendants collectively terminated

Case 2:21-cv-00189  Document 1-1  Filed 03/26/21  Page 26 of 29 PageID #: 33

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)

2014 WL 12625463

[him] due to his age," in violation of ⬜ W. Va. Code § 5-11-9. (*Id.*) The Plaintiff also requests an award of "his costs and expenses expended in the preparation of this Motion to Remand and Memorandum," because the "defense had no grounds to remove this matter to the district court." (*Id.* at 7.)

The Defendants respond that the Plaintiff cannot have a viable claim against an ordinary supervisor such as White under the WVWPCA because "[o]nly corporate officers may have liability under the Wage Act and there is no allegation in the Complaint that White is a corporate officer." (Document 10 at 1.) The Defendants further state that "the propriety of removal is based on the allegations contained in the Complaint, not the arguments of counsel in a legal brief," and "[n]owhere in the Complaint does Plaintiff allege that White is an officer of Best One, or that he knowingly permitted Best One to violate the Wage Act." (*Id.* at 2.) Further, the Defendants claim that the matter is unquestionably settled because Defendant White swore under oath in his affidavit that he is not a corporate officer of Best One. (*Id.*) "Simply put, White is plainly not the executive level type of "officer" contemplated by the Wage Act." (*Id.* at 3.)

With respect to the alleged violations of the Human Rights Act, the Defendants reiterate that "individuals are not subject to liability for employment discrimination unless they themselves are employers. There is no allegation in this case that White was Plaintiff's employer." (*Id.*) They maintain that Plaintiff's claim is "pled entirely under ⬜ West Virginia Code § 5-11-9, which makes employment discrimination by an 'employer' unlawful." (*Id.* at 3.) (footnote omitted.)

### A. West Virginia Wage Payment and Collection Act

**\*5** The Court finds that Defendant White is not an officer of any corporation named as a Defendant in the instant suit, and thus, cannot be liable for violations of the West Virginia Wage Payment and Collection Act. W. Va. Code § 21-5-4 states that "[w]henever a person, firm or corporation discharges an employee, the person, firm or corporation shall pay the employee's wages in full no later than the next regular payday or four business days, whichever comes first." W. Va. Code § 21-5-4(b). Further, "[i]f a person, firm or corporation fails to pay an employee wages as required under this section, the person, firm or corporation, in addition to the amount which was unpaid when due, is liable to the employee for three times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e). The term officer is defined in the WVWPCA to "include officers or agents in the management of a corporation

or firm, who knowingly permit the corporation or firm to violate the provisions of this article," *See* 🚩 W. Va. Code § 21-5-1(h), while the term "employer" means "any person, firm or corporation employing any employee." ⬜ W. Va. Code § 21-5-1(m).

The Plaintiff "conten[ds] that as a manager of S&S, defendant White was an agent in the management of S&S who knowingly permitted the corporation to violate the Act, and is therefore liable for [Plaintiff's] unpaid wages and benefits." (Document 8 at 4-5.) The language of the complaint, together with the record at the time of removal, plainly belies any contention that Defendant White was an officer of S&S, Inc. It describes White as a "manager of the defendant S&S located in Beckley, West Virginia." (Document 1-1 at 6.) Nowhere is it alleged that he was an officer, chief executive officer, chief financial officer, or served on the corporate board of S&S, Inc., d/b/a Best One.

There was also no mention of agent, principle, nor any reference to an agency relationship in the complaint between Defendants White and S&S—beyond the normal employee-employer relationship. The only reference to Defendant White's acts in the complaint is that he advised the Plaintiff "he was being terminated due to cut backs," and that the termination was "temporary but could last up to six months." (Document 1-1 at 7.) As mentioned above, courts may consider the record beyond the pleadings to "determine the basis of joinder" and "whether an attempted joinder is fraudulent." ⬜ *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation marks and citations omitted). Defendant White's uncontested affidavit, which was a part of the record at the time of removal, indicates that White "was never [Plaintiff's] employer." (*Id.* at 28.) Further, White swore that he is "not an officer or director of Best One, nor do I have any ownership interest in the company." (*Id.*) This affidavit lends further support that no cognizable claim exists against Defendant White based on the allegations contained in the current complaint.

⬜ *Goodwin v. Willard*, 185 W.Va. 321, 406 S.E.2d 752 (W. Va. 1991), the case Plaintiff cites for support in his memorandum of law accompanying his motion to remand, provides no support for remand. (*See* Document 8 at 5.) In *Goodwin*, terminated employees brought an action under the WVWPCA against three alleged owner-operators of

Case 2:21-cv-00189 Document 1-1 Filed 03/26/21 Page 27 of 29 PageID #: 34

Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)

2014 WL 12625463

Seminole, a coal mining business. *Goodwin*, 406 S.E.2d at 754. The defendants were Mr. Morgan, Mr. Willard, and Mr. Lively. Mr. Morgan and Mr. Willard never answered or filed any appearance in the action, and default judgment was granted against them. However, Mr. Lively did appear and was subsequently granted summary judgment on the issue of whether he was an officer or agent in the management of Seminole within the meaning of W.Va. Code 21-5-1(h).

On appeal, the West Virginia Supreme Court of Appeals disagreed with Mr. Lively—and the circuit court—and found that a question of fact existed regarding whether he was an agent for Seminole. In reversing and remanding, the Supreme Court noted that "[a]lthough the appellee denies that he acted in any capacity as an agent or officer of Seminole, there is evidence which indicates that the appellee held meeting with the employees where he discussed the coal operations and promised to pay their wages." *Goodwin*, 406 S.E.2d at 757. The Supreme Court further noted that "[t]here is also evidence that the appellee purchased and delivered supplies to the mine, acquired equipment for the mining operations and visited the mine on occasion to oversee the operations." *Id.* "Although the appellee is not listed as an officer of Seminole in the articles of incorporation, his active participation in the business and his representations to the employees raise a factual question as to whether he was acting as an agent in the management of the corporation." *Id.*

**\*6** While it is true that corporate officers can be personally liable for violations of the WVWPCA when they knowingly permit the corporation to violate the provisions of the Act, here there has been no allegation that White is or was a corporate manager involved in the management of S&S, Inc., or that he knowingly permitted S&S, Inc., to violate the WVWPCA. *Accord Mullins v, Venable*, 297 S.E.2d 866, 868-69 (W. Va. 1982); *McDaniel v. West Virginia Div. of Labor*, 591 S.E.2d 277, 283-84 (W. Va. 2003).

> The position of an officer of a corporation, relative to his individual liability for the debts of the corporation, is not sacrosanct. While officers ordinarily are not held responsible for corporate debts, it is well established that where a statute so provides directors or officers may be required to account

> personally for certain obligations of the corporation ... and so long as the statute is afforded a fair and responsible interpretation so as to give effect to the legislation intent as indicated by the language used, it is valid.

*State ex rel. Haden v. Calco Awning and Window Corp.*, 170 S.E.2d 362, 364 (1969). It is clear that if Defendant White were an officer of S&S, Inc., he would be exposed to any potential liability if he knowingly permitted the corporation to violate the WVWPCA. Since the court, accepting all factual allegations in the complaint as true, could not find that he is a corporate officer or agent in the management of S&S, or that he knowingly permitted S&S, Inc., to violate the WVWPCA, he cannot be held liable for any alleged violation of the WVWPCA committed by the Plaintiff's employer, S&S, Inc.

### B. West Virginia Human Rights Act

Likewise, the Court finds that Defendant White cannot be found liable for violations of the West Virginia Human Rights Act as currently pled in the Plaintiff's complaint. Importantly, the complaint alleges that "[p]ursuant to West Virginia Code § 5-11-9 it is an unlawful discriminatory practice for an employer to discriminate against an employee based upon his age." (Document 1-1 at 8.) The complaint further alleges that "Defendants violated West Virginia Code § 5-11-9 by terminating plaintiff's employment because of his age." (*Id.*)

West Virginia Code § 5-11-9 states that it shall be an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required ..." W.Va. Code § 5-11-9(1). Crucially, this is the direct language found in the Plaintiff's complaint that underpins the claim of a violation of the West Virginia Human Rights Act. (*See* Document 1-1 at 8, ¶ 26.) However, the Plaintiff cites to *Holstein*, and the language contained in W. Va. Code § 5-11-9(7), in his brief in support of remand, to argue that Defendant White aided and abetted the alleged age discrimination.

The Plaintiff's complaint does not contain an allegation of any violation of W. Va. Code § 5-11-9(7). It only alleges that the Defendants violated § 5-11-9(1), and the complaint quotes the language from that section. W. Va. Code § 5-11-9(7) states that it shall be an unlawful discriminatory practice "[f]or any person, employer ... to: (A) [e]ngage in any form of threats or reprisals ... or *to aid, abet, incite, compel or coerce* any person to engage in any of the unlawful discriminatory practices defined in this section." W.Va. Code 5-11-9(7) (emphasis added). Importantly, nowhere does § 5-11-9(7) or the word(s) aid, abet, incite, compel, or coerce appear in the Plaintiff's complaint. They do, however, appear in the language of the complaint at issue in *Holstein*.

**\*7** The facts of *Holstein* are rather analogous to those at issue here. *Holstein* involved a sixty-three year old plaintiff who was discharged from his inside salesperson employment due to a "cost cutting measure," and a "new and much younger employee was hired within months." *Holstein*, 461 S.E.2d at 475. He brought suit against the corporation, Norandex, Inc., and his manager, Mel Counts. *Id.* Divergent to the complaint at issue here, the plaintiff there alleged that the corporation violated W.Va. Code § 5-11-9(1) "by discriminating against [him] in his employment because of his age," and that his manager, Mel Counts, "was responsible for [his] discharge and violated W.Va. Code § 5-11-9(7) by aiding and abetting [the corporation] in an act of unlawful discrimination." *Id.* The manager brought a motion to dismiss, which was subsequently granted by the circuit court. *Id.* Holstein appealed, arguing that the circuit court "erred by dismissing [the manager] as a defendant," and further, that "the plain language of the West Virginia Human Rights Act clearly inculpates supervisors, such as [the manager], who participate in, approve of, sanction or ratify discriminatory acts, and that his complaint sufficiently alleges that [the manager] aided and abetted [the corporation] in carrying out ... unlawful discrimination." *Id.* at 476.

The *Holstein* court looked to the Fourth Circuit Court of Appeals and the matter of *Marshall v. Manville Sales Corp.*, 6 F.3d 229 (4th Cir. 1993) for its determination of whether W.Va. Code § 5-11-9(7) supports a cause of action against a plaintiff's supervisor and/or fellow employee for violation of the West Virginia Human Rights Act. *Holstein* detailed the rationale of *Manville* as follows:

Facts similar to those now before us were presented in [*Marshall*]. In that case, Mildred Marshall filed suit against her former employer, Manville, and Robert Manson, Manville's plant manager, alleging sex and age discrimination. Manville subsequently removed the suit to federal court, stating that Marshall had fraudulently joined Mason, a West Virginia resident, in order to avoid diversity jurisdiction. The district court subsequently dismissed Mason from the suit because he was not Marshall's employer.

On appeal, Marshall argued she had a valid cause of action against Mason under West Virginia law, while Manville maintained that Mason was fraudulently joined because he could not possibly be viewed as an "employer" under W.Va. Code § 5-11-9(a)(1), which prohibits any employer from discriminating against an individual regarding wages and other conditions of employment. The Fourth Circuit Court of Appeals stated:

> Manville's argument overlooks Marshall's cause of action against Mason as a person. As the district court noted, Marshall also sought relief under another section of the Human Rights Act which provides that it is an unlawful discriminatory practice for any person ... to ... aid, abet, incite, compel or coerce any person to engage in any unlawful discriminatory practices defined in this section.

(current version at W.Va. Code § 5-11-9(7)). This section does not limit the potential defendants to employers as defined by the West Virginia Code. *Under this section Mason can be held liable for his discriminatory actions as a person.*

*Holstein*, 461 S.E.2d at 477-78 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 230, 232 (4th Cir. 1993)) (emphasis in original).

The West Virginia Supreme Court of Appeals in *Holstein* then reversed the circuit court's dismissal of the manager, finding that "a cause of action may be maintained by a plaintiff employee as against another employee under the West Virginia Human Rights Act. Further, the cause of action may properly be based upon an allegation that the defendant employee aided or abetted an employer engaging in unlawful discriminatory practices." *Holstein*, 461 S.E.2d at 478.

Case 2:21-cv-00189   Document 1-1   Filed 03/26/21   Page 29 of 29 PageID #: 36
Pack v. S&S Firestone, Inc., Not Reported in Fed. Supp. (2014)
2014 WL 12625463

Unfortunately for the Plaintiff, here, his complaint does not contain a claim for violating ⚐ W.Va. Code § 5-11-9(7), nor does it allege that White aided, abetted, incited, compelled or coerced the alleged discrimination. Accordingly, there is no cause of action against White, a fellow employee and the Plaintiff's supervisor, under ⚐ W.Va. Code § 5-11-9(1), as currently pled. The Defendants have successfully met their burden of demonstrating that the Plaintiff could not possibly establish a cause of action against White for violating W.Va. Code § 21-5-4 or ⚐ W.Va. Code § 5-11-9(1). Therefore, White must be dismissed as fraudulently joined, and, consequently, this Court enjoys subject matter jurisdiction over the remaining Defendants.

*CONCLUSION*

**\*8** Following thorough review and careful consideration, the Court **FINDS** that it enjoys subject matter jurisdiction over the above-styled matter. Accordingly, the Court **ORDERS** that the Plaintiff's *Motion to Remand* (Document 7) be **DENIED** and that the Plaintiff's request for attorney fees and costs be **DENIED**. The Court further **ORDERS** that the Plaintiff's claims, as currently pled against Defendant White, be **DISMISSED WITHOUT PREJUDICE**, and that Richard White be removed from the docket and style of this case.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

**All Citations**

Not Reported in Fed. Supp., 2014 WL 12625463

# Footnotes

1    W. Va. Code § 21-5-4(b) was subsequently amended, effective July 12, 2013, to reflect that an employer now has until "the next regular payday or four business days, whichever comes first" to pay their discharged employee his wages. W. Va. Code § 21-5-4 (b) (2013). The amendment does not apply to the case at bar, however, as the Plaintiff was allegedly fired on March 8, 2013.

2    The Defendants attached a litany of documents to their notice of removal, many of them duplicates of earlier exhibits in the same submission. For clarity, the Court distilled the twenty eight (28) pages of exhibits into the following list: (1) a one page copy of a letter from the Secretary of State to the Defendants; (2) ten page copy of summons, complaint and docket sheet from Circuit Court of Raleigh County, West Virginia; (3) four page copy of business organizational detail from the West Virginia Secretary of State; and (5) a one page copy of an Affidavit of Richard White, dated May 30, 2014. (*See* Document 1-1 at 1-28.)

3    ⚐ Section 1441 states in pertinent part:
      Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
      ⚐ 28 U.S.C. § 1441(a).

4    The Plaintiff does not challenge the assertion that the amount-in-controversy aspect of diversity jurisdiction is satisfied. The parties' arguments focus solely on the issue of fraudulent joinder.

© 2021 Thomson Reuters. No claim to original U.S. Government Works.